KECK
v.
UMPHRIES.

KECK v. UMPHRIES.

Where, on a motion for a new trial, the inquiry arises, what was the evidence given to the jury, an affidavit of the defendant as to his belief of what was proved, derived from recollection, or from information received from the jury or his counsel, will be allowed no weight against the ruling of the Court.

Slander for charging the defendant with larceny. Plea, not guilty. Verdict for the plaintiff. The defendant moved for a new trial on the ground that the words proved on the trial, if spoken at all, were not spoken on the occasion alleged by the witness, but on a subsequent one. Neither of the affidavits offered in support of the motion, denied the speaking of the words. *Held,* that they did not, therefore, sustain the motion.

New trials are rarely, if ever, granted to give an opportunity to impeach the credit of a witness.

Monday,
December 5.

ERROR to the *Shelby* Circuit Court.

DAVISON, J.—*Umphries* sued *Keck* in an action of slander. The declaration charges the speaking of various sets of words, and among them the following, viz.: "*Andy* and *Umphries* are the d—d rascals who took my money." Plea, not guilty. Verdict for the plaintiff below. Motion for a new trial overruled, and judgment on the verdict.

In support of this motion *Keck* filed two affidavits—his own, and the affidavit of one *William Hacker*. *Keck*, in his affidavit, states substantially that upon the trial *Umphries* called one *David Roedefer*, who testified that he was present in front of the court-house in *Shelbyville*, on the afternoon of the 30th of *October*, 1850, when he heard him, *Keck*, speak the above words. This was immediately after *Andrew Derickson* and *George Umphries* had been, on the complaint of said *Keck*, tried for larceny. He further states that the above set of words, in the opinion of the jury, were the only words proved on the trial, as the jury informed him. His counsel also informed him, and he believes it to be true, that no other set of words was proved by other witnesses. And he verily believes that the verdict was found alone upon *Roedefer's* testimony. That after the verdict was given he discovered that he

could prove by the said *Hacker*, that the words sworn to by *Roedefer* were spoken, if spoken at all, on the 7th of *January*, 1851, on the occasion of another and different trial, and more than a month after this suit was commenced. The fact that he could make such proof by *Hacker*, or any other witness, was unknown to him until after the verdict was rendered, &c.

Nov. Term, 1853.

KECK
v.
UMPHRIES.

The affidavit of *Hacker* states, in substance, that on the 22d of *August*, 1851, he had a conversation with *Roedefer* in *Shelbyville*. *Roedefer* asked him if he remembered certain words spoken by *Keck* in front of said court-house immediately after *Derickson*, on complaint for surety of the peace, had been tried before justice *Kirk?* *Hacker* replied that he did not. *Roedefer* then stated that the words spoken on that occasion were these, viz.: "I do not blame *Umphries;* but *Billy* and *Andy* are the d—d rascals that took my money." He called *Hacker's* attention to the fact that he, *Hacker*, had acted with squire *Kirk* on the trial of the surety case, and stated that when *Keck* spoke the words, *Hacker* was standing near the court-house in conversation with one *Davis*. *Roedefer* said there was a difficulty between him and *Keck*. He was subpoenaed in this case, and wished to find out some other who recollected of having heard the words spoken. He did not wish to go into Court and testify without some one to sustain him. The affidavit also states that *Hacker* was present at the trial of the surety case, and acted with esquire *Kirk* in the examination of it. This trial took place after the present suit was commenced. That he was standing near the court-house door, and in conversation with the said *Davis* at the time stated by *Roedefer*. That *Keck* was there, but he, *Hacker*, did not hear the above words spoken. The trial of *Derickson* and *Umphries* took place in *October*, 1850. He was not present at that trial, nor did he know of it until some days afterwards, &c.

Upon the hearing of this motion, it seems to have been a subject of inquiry whether any words other than those sworn to by *Roedefer*, were proven on the trial. Relative

Nov. Term,
1853.

to this matter, the Court could have had no difficulty in arriving at a conclusion. All the evidence in the cause was before it. And if the speaking of other words was shown, the Court, no doubt, heard the proof. But the evidence is not on the record, and we are not, therefore, in possession of the facts requisite to a proper solution of the question. What *Keck* may have believed or been informed by the jury or his counsel can have no weight against the ruling of the Court. The affidavits, in our opinion, do not sustain the motion. Neither of them denies the speaking of the words. What *Roedefer* stated out of Court might affect his credibility. But "new trials are rarely, if ever, granted," to give an opportunity of impeaching the credit of a witness. 3 Johns. R. 255.— 5 *id*. 258.—6 Blackf. 496. We think the Court committed no error in refusing to sutain the motion.

*M. M. Ray* and *T. D. Walpole*, for the plaintiff.

*W. J. Peaslee* und *A. W. Hubbard*, for the defendant.

